In a notarial act signed on November 15, 1939, Mrs. Ada Booker declared that she was selling and conveying unto C.C. Collier, with full guaranty of title, a 20 acre tract of land owned by her and located in Concordia Parish, Louisiana. The recited consideration was $300, payable $60 cash, "and the balance being for the sum of Two Hundred Forty and No/100 ($240.00) Dollars, by assuming and agreeing to pay and discharge that certain mortgage indebtedness, in principal and interest, in favor of A.B. Hagle, as evidenced by the act of mortgage recorded in Mortgage Book NN, page 328 of the Mortgage Records of Concordia Parish, Louisiana."
The notes evidencing the assumed Hagle mortgage indebtedness were then owned by a firm known as Pasternacks.
A supplementary deed affecting the property and showing the same consideration was executed a day later, Mrs. Booker being joined therein by her husband, A.E. Booker.
On March 16, 1940, Collier conveyed the 20 acres, less one-half of the minerals thereunder, to R.O. Rucker, the consideration being $1,000 payable on terms of credit.
This suit was brought by Mrs. Booker against Collier and Rucker on September 12, 1940, to annul the described conveyance acts, she alleging that Collier had fraudulently induced her to sign the instruments by representing that she was granting unto him a mortgage on her property. In the alternative, plaintiff prayed for judgment against Collier in the sum of $2,000.
Defendants, for answer, denied the charge of fraud and averred that the conveyance was valid, legal and binding.
On January 4, 1941, before trial of the merits of the case, plaintiff executed a notarial act in which she quitclaimed and released unto defendant Rucker all of her rights and interest in the 20 acre tract and agreed to move therefrom on or before January 10, 1941. The consideration for the relinquishment and agreement was the payment by Rucker of $200 cash and his promise to dismiss a pending suit in which he was seeking possession of the property.
The compromise, evidenced by the last described notarial act, rendered ineffective plaintiff's claim for annullment of Rucker's title, and left for judicial consideration only her alternative demand for damages against Collier.
The district court, following the introduction of evidence, rejected the demands of plaintiff and dismissed her suit. From this judgment she has appealed.
Appellant's action is clearly one in tort for damages, as it is based upon allegations that Collier fraudulently obtained from her a deed, representing that she was giving only a mortgage. It cannot be, and is not, a suit to recover the value of the property on the ground of lesion beyond moity, because she insists that no valid deed was ever granted.
Consequently, and as stated in the brief of appellant's counsel, the appeal presents *Page 44 
only the issue of whether or not Mrs. Booker was induced by the fraud of Collier to execute in his favor the assailed conveyance instruments. This issue, of course, is one of fact.
Collier, so the record shows, expended the total sum of $354 in connection with the transaction. This amount represented payments to Pasternacks of $239 for the principal and interest on the mortgage indebtedness and of $85 on an open account debt, and a further payment of $30 to A.B. Hagle for the cancellation of a tax subrogation.
As to the true value of the property when the deeds were executed, the evidence is quite unsatisfactory. Seemingly, it was more than the amount that Collier paid, in view of his sale to Rucker months later for a consideration of $1,000. Yet, on the other hand, there is testimony that the tract was not then worth the existing indebtedness of Mrs. Booker; and the record suggests that exploration for oil was subsequently carried on in that area causing an enhanced value.
It is the testimony of Mrs. Booker that Collier came to her house and offered to pay off the mortgage indebtedness to Pasternacks to keep her from losing the property, stating that he had $200 or $300 not then being used and she could repay the money whenever convenient. She had previously received a letter from her creditor, but no foreclosure of the mortgage had been threatened. Her husband was then in a hospital.
Later, so she further testified, she executed two instruments, one of which her husband signed. The documents were not read, and Collier stated that only a mortgage on the property was being granted. She continued to live on the place until in January, 1941. In the meantime, or during the month of January, 1940, Rucker paid her the sum of $70 as rental on the 20 acres for a period of one year.
Plaintiff's daughter told of hearing a conversation between plaintiff and Collier in which the latter informed her mother that a year was allowed for payment and that she could remain on the property even though the debt was unpaid.
Collier testified that he called to see plaintiff, having observed her in the yard while passing, and she discussed with him a letter just received from Pasternacks in which foreclosure of the Hagle mortgage was threatened if settlement arrangements were not made in ten days. On learning of this threat he carried her in his truck to confer with Pasternacks, but no extension on the debt could be arranged. Then they journeyed to the home of Corneal Goldman seeking assistance, but he refused to help because he thought the property was not worth what she owed on it. After this refusal, and at plaintiff's request, Collier agreed to pay off all debts and accept title to the 20 acres and permit plaintiff and her husband to retain possession throughout the year 1940.
The described trip made by plaintiff with Collier to talk with Pasternacks and Goldman is admitted by her.
According to the witness Goldman, plaintiff, in her conversation with him and Collier, said that she would rather for anybody to take the land other than Pasternacks.
Mr. and Mrs. Rucker, so their testimony shows, were told by plaintiff that she had deeded the place to Collier. She made the statement to them after Rucker had rented the property and when he questioned her about the execution of the deeds.
There are certain circumstances that tend to corroborate plaintiff's assertion of intending to grant only a mortgage. These are her retention of possession and her renting of the property to Rucker. However, seemingly plausible explanations of these incidents are given by Collier and Rucker.
On the other hand, an important circumstance supports the position of appellee. It was Collier's carrying of plaintiff to Pasternacks and to Goldman with the view of obtaining an adjustment of the matured mortgage indebtedness. Certainly this act was not consistent with the idea of his perpetrating a fraud on her.
Also in substantiation of appellee's contention is the following testimony given by S.R. Gray, a witness for plaintiff, relating to the occasion when Collier paid off plaintiff's indebtedness:
"Q. Was anyone else there at the court house with you besides Mrs. Booker and Mr. Collier? A. Yes, Johnnie Dale, Jr., was there.
"Q. What part did he take in connection with this transaction? A. I think John was acting for Mr. Collier as his lawyer. *Page 45 
"Q. Was any mention ever made at that time in Mrs. Booker's presence as to what the instrument was that Mr. Collier had in his possession? A. Yes, Mr. Dale advised Mr. Collier that the deed wasn't properly executed and he advised Charlie to have Mr. Booker sign it. I don't think it was signed by Mr. Booker at that time.
"Q. This was all done in Mrs. Booker's presence? A. Yes."
It was encumbent on plaintiff to prove her allegations of fraud by a preponderance of evidence. In determining whether or not this burden has been discharged, the weighing of much conflicting testimony is necessary. The trial judge could do this much better than we can, because he saw and heard the witnesses as they testified and most probably he knew them well. He resolved the conflict in favor of appellee and concluded that plaintiff had not made out her case. We cannot say that his conclusion is manifestly erroneous.
The judgment, therefore, is affirmed.